UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERIC ATKINSON,
                    Plaintiff,

           v.                                          CASE NO. 3:15-cv-913 (DJS)

MONICA RINALDI, KARL LEWIS,
ANNE COURNOYER, JACKLYN BACHAN,
CARL LOVISOLO and LYNN MILLING,
                    Defendants.


**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

        The plaintiff, Eric Atkinson, who is currently incarcerated at the Cheshire Correctional

Institution, commenced this civil rights action against various medical staff members and

correctional officers at the Bridgeport Correctional Center ("BCC") in their individual and

official capacities.  He asserted claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for denial

of rights protected by the Fourth, Eighth and Fourteenth Amendments.  The remaining

defendants, Monica Rinaldi, Karl Lewis, Anne Cournoyer, Jacklyn Bachan, Carl Lovisolo and

Lynn Milling, have filed a motion for summary judgment.  For the reasons that follow, the

defendants' motion is granted.

I.       Standard of Review

        A motion for summary judgment may be granted only where there are no issues of

material fact in dispute and the moving party is entitled to judgment as a matter of law.  Rule

56(a), Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).  The moving party

may satisfy his burden "by showing—that is pointing out to the district court—that there is an

absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*,

315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).

Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a reasonable jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). The nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Unsupported allegations do not create a material issue of fact to defeat a motion for summary judgment. *See Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

II.    <u>Facts</u>

The plaintiff is a sentenced inmate in the custody of the Connecticut Department of Correction. He is serving a five-year sentence for criminal possession of a pistol/revolver. On March 25, 2014, the plaintiff was housed in cell A-5-10 in the Restrictive Housing Unit at BCC. The plaintiff had been placed in restrictive housing because he received seven disciplinary reports while confined at BCC. The disciplinary reports included charges for threatening staff, fighting, and interfering with safety and security. Before coming to BCC, the plaintiff was housed at the New Haven Correctional Institution and the Corrigan Correctional Institution where he received disciplinary reports for threatening staff, disobeying direct orders, and endangering safety and security.

On March 25, 2014, defendant Lovisolo was in the restrictive housing unit at BCC supervising officers who were placing other inmates in restrictive housing. While doing so,

Lovisolo observed the plaintiff screaming derogatory remarks at Correctional Head Nurse Steelman.  Defendant Lovisolo approached the plaintiff, who was in his cell with the door closed. Defendant Lovisolo could see the plaintiff through the cell door window, which is made of Plexiglas with perforations to permit sound and air to pass through.

Defendant Lovisolo told the plaintiff to stop yelling derogatory remarks at Nurse Steelman.  The plaintiff refused to stop and used profanity against defendant Lovisolo.  He stated that he had already received 266 disciplinary reports.  Defendant Lovisolo states that the plaintiff spit at him and that some of the saliva passed through the holes in the window and struck defendant Lovisolo on the lower jaw, neck and shirt.  The plaintiff denies spitting at defendant Lovisolo and contends that saliva cannot pass through the holes in the Plexiglas window. [1] Defendant Lovisolo stepped away from the plaintiff's cell and continued to supervise the restrictive housing placements.  He reported the incident to his supervisor, Captain Melms. Defendant Lovisolo told Captain Melms that he wanted to file a police report and press criminal charges against the plaintiff for assault.

At approximately 10:00 a.m., Correctional Officer Lopez delivered a disciplinary report to the plaintiff.  The charge was assault on a correctional employee, a Class A disciplinary offense.  At approximately 11:00 a.m., Connecticut State Trooper Slaiby arrived at BCC in response to the reported assault.  Defendant Lovisolo told Trooper Slaiby that the plaintiff had spit in his face and provided a sworn statement reciting his version of events.

Trooper Slaiby spoke to Nurse Steelman about the incident.  Nurse Steelman also

---

[1]"Because the material facts of this case are in dispute, we emphasize at the outset that we, and the district court, are bound to consider the facts in the light most favorable to [the plaintiff], the non-moving party." *Simpson v. City of New York*, 793 F.3d 259, 261-62 (2d Cir. 2015).

provided a sworn statement indicating that she was checking the wrists of inmates who had just been placed in restrictive housing when the plaintiff began yelling derogatory remarks about her and stating that he would "get" her.  Nurse Steelman stated that the plaintiff yelled the remarks over fifteen times and indicated that she felt threatened.  Nurse Steelman stated that she ignored the remarks and kept working.  When the plaintiff continued yelling at her, defendant Lovisolo moved closer to Nurse Steelman and in front of the plaintiff's cell.  Nurse Steelman stated that, while she was performing a handcuff check, she heard someone spitting.  Although she did not see who was spitting, she knew that the sound came from the plaintiff's cell.  After she heard the noise, defendant Lovisolo stated that the plaintiff had spit at him.  The plaintiff continued to yell derogatory remarks at Nurse Steelman and defendant Lovisolo.

Trooper Slaiby attempted to interview the plaintiff as part of his investigation.  The plaintiff refused to speak to or look at Trooper Slaiby.  The plaintiff also refused to sign a notice of rights form or be fingerprinted.  The plaintiff was escorted back to his cell in the restrictive housing unit.  Based on the information learned through his investigation, Trooper Slaiby charged the plaintiff with the crimes of assault on safety personnel and refusing to be fingrprinted.  The plaintiff was held on a $5,000 bond on these charges.  Captain Melms told Trooper Slaiby that the plaintiff also was being held on other bonds totaling over $300,000 for other pending criminal matters.  The case was marked closed by arrest.

In the aftermath of this incident, Deputy Warden Jones recommended that the plaintiff be reviewed for placement on Administrative Segregation Status and transferred to Northern Correctional Institution.  The plaintiff had two prior placements on Administrative Segregation Status during which he received 226 disciplinary reports including sixteen for assault on correctional employees. On March 25, 2014, the plaintiff was transferred to Northern

Correctional Institution.

On March 31, 2014, the plaintiff received a Notification of Hearing form, dated March 28, 2014, informing him that a classification hearing would be held on April 3, 2014. The purpose of the hearing was to consider his placement on Administrative Segregation Status. The notice indicated that the plaintiff could choose an advocate and submit witness statements. The plaintiff declined witnesses but provided a list of advocates. Correctional Counselor Mortimer, the second name on the plaintiff's list, was assigned as his advocate. The hearing resulted in a recommendation of placement on restrictive status for the reasons that the plaintiff "intentionally spit on a staff member . . . [and] has also accumulated 267 disciplinary reports." (Doc. # 87-14, at 2).

On April 7, 2014, Director of Offender Classification and Population Management Lewis authorized the recommended placement of the plaintiff on Administrative Segregation Status. When he was told that his placement had been approved, the plaintiff stated that he was not worried. He had completed the Administrative Segregation Program twice before and would do it again.

Defendant Lynn Milling was not involved in the plaintiff's placement on Administrative Segregation Status in 2014 or at any time thereafter. Defendant Monica Rinaldi also was not involved in the plaintiff's placement on Administrative Segregation Status in 2014 or at any time thereafter.

On May 7, 2014, the plaintiff attended a hearing on the disciplinary charge for assault on staff. The plaintiff provided a written statement and identified inmates Nau, Demo and Binnette as witnesses for the disciplinary hearing. At the conclusion of the hearing, the charges were dismissed for the following stated reasons: (1) "failed to be disposed [of] prior to [the] end of

5

continuance dates[2]," and (2) "issuing facility failed to provide . . . any documentation not authored by [the] reporting employee." (Doc. # 87-18, at 3).

The plaintiff appealed his placement on Administrative Segregation Status, but that appeal was denied for the reason that "[t]he current incarceration behavior you have demonstrated since your admission is a valid rationale for placement . . . . Since August 29, 2013, you were found guilty in violating the Code of Penal Discipline on 19 occasions. As such the compilations of all of your actions were taken into account during your hearing and the Administrative Segregation placement is warranted." (Doc. # 87-20, at 2). On May 21, 2014, the plaintiff was informed that his appeal had been denied.

On July 1, 2014, the criminal charges for assault and failure to submit fingerprints were nolled by the Honorable Robert Devlin of the Connecticut Superior Court.  The charges were nolled because, on May 26, 2014, the plaintiff had been sentenced in a different criminal proceeding to twelve years imprisonment, execution suspended after five years, with three years of probation.

The plaintiff remained in Administrative Segregation at the time he filed this action in June 2015. Since May 1, 2014, the plaintiff has received over 115 disciplinary reports for offenses including threats, assault on staff, interfering with safety and security, insulting language and disobeying a direct order.

---

[2] The Disciplinary Process Summary Report pertaining to this matter reflects two continuances of this matter. The first was a continuance from April 7, 2014 to April 22, 2014, and the second was from April 22, 2014 to May 6, 2014. (Doc. # 87-18, at 2).

III.    Discussion

The defendants move for summary judgment on eight grounds:  (1) any official capacity claims against the defendants are barred by the Eleventh Amendment; (2) defendants Lovisolo and Lewis were the only defendants personally involved in the incidents giving rise to the plaintiff's complaint; (3) the plaintiff's Fourth Amendment rights were not violated; (4) the plaintiff's due process rights were not violated; (5) the plaintiff's Eighth Amendment rights were not violated; (6) the plaintiff's right to equal protection was not violated; (7) the plaintiff's conspiracy claim lacks merit; and (8) the defendants are protected by qualified immunity.  The plaintiff's memorandum in opposition to the motion for summary judgment asserts arguments to support what he considers the four remaining arguments in the amended complaint - -  violation of rights under the Fourth and Eighth Amendments and the Due Process and Equal Protection Clauses of the Fourteenth Amendment - -  but fails to address several of the arguments raised by the defendants.

A.    Official Capacity Claims

In the prayer for relief in the amended complaint, the plaintiff seeks a declaratory judgment stating that the defendants violated his rights as well as compensatory and punitive damages.  In his statement of the case, the plaintiff also seeks "an injunction to ensure his release from Northern CI." (Doc. # 8, at 7).[3]

The plaintiff does not specify in which capacity he seeks damages from the defendants. The defendants move to dismiss all claims for damages against them in their official capacities. The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for

---

[3] At the time he filed this action, the plaintiff was incarcerated at Northern Correctional Institution in Somers, Connecticut.

money damages against state officials acting in their official capacities unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity; *Quern v. Jordan*, 440 U.S. 332 (1979); and the plaintiff has provided no evidence that the state has waived immunity.

Accordingly, the defendants in their official capacities are protected from an award of damages by the Eleventh Amendment. The plaintiff does not address this argument. The defendants' motion for summary judgment is granted as to any and all claims for damages against them in their official capacities.

Although Section 1983 does not bar injunctive relief against the defendants in their official capacities, such relief is not warranted in this instance. The Court notes that the plaintiff currently is confined at the Cheshire Correctional Institution. Thus, any request for injunctive relief to be transferred from the Northern Correctional Institution is moot and the defendants' motion for summary judgment is granted as to the plaintiff's request for injunctive relief.

B.     Personal Involvement

The defendants next argue that defendants Lovisolo and Lewis are the only defendants personally involved in the incidents underlying this action. Thus, summary judgment should enter on all claims against the other defendants, i.e., Milling, Rinaldi, Cournoyer and Bachan. To state a claim for supervisory liability under Section 1983, a plaintiff must demonstrate one or more of the following criteria:  (1) the defendant actually and directly participated in the alleged actions, (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal, (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or permitted such a policy or custom to continue, (4) the defendant was grossly negligent in his supervision of the

officers who committed the constitutional violation, or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  *See Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). [4]  The plaintiff also must demonstrate a causal link between the actions of the supervisory official and his injuries.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The plaintiff addresses this argument briefly.  He states that these defendants failed to take corrective action after he made them aware of his claims through his appeals.  The plaintiff refers the Court to attached exhibits 14, 15, 16 and 19.  Defendant Cournoyer was copied on the letter in exhibit 15.  The other three defendants are not mentioned in any of these exhibits.  The plaintiff has presented no evidence that any of these defendants was aware of his claims.  The plaintiff's assumption that by filing an appeal every supervisory official was automatically aware of his claims has no support in the record.

Defendant Milling has submitted an affidavit in which she states that she ceased serving as the Director of Offender Classification and Management in August 2012 and "was not involved in the placement of Mr. Atkinson on Administrative Segregation at any time in 2014 or thereafter . . . ." (Doc. # 87-16, at 3, ¶ 8).  Her name does not appear on any document associated with the plaintiff's classification to Administrative Segregation Status in March 2014, and the plaintiff provides no evidence that defendant Milling was even aware of the incident.

Defendant Rinaldi states in her affidavit that she assumed her current position of Deputy

---

[4] In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Supreme Court reaffirmed that supervisory liability under §1983 cannot be based on a theory of *respondeat superior* and went on to state that "each Government official . . . is only liable for his or her own misconduct." In light of the Supreme Court's pronouncement in *Iqbal*, the current viability of the supervisory liability test articulated in *Hernandez* is unsettled: "We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014).

Commissioner of Operations and Rehabilitative Services in September 2014.  She also states that she "was not involved in the decision to transfer [] Eric Atkinson . . . to NCI for placement into Administrative Segregation, nor any other action taken involving Eric Atkinson at that time." (Doc. # 87-17, at 2, ¶ 5). Although the plaintiff alleges that defendant Rinaldi participated in the final decision to send him to Northern Correctional Institution, he provides no objective evidence supporting this conclusory statement.  He also alleges that defendant Rinaldi, along with defendants Milling, Lewis, Cournoyer, and Bachan drafted the notice of administrative segregation hearing that was delivered to him.  That document does not bear the signature of any of these defendants, and the plaintiff provides no evidence that any of them was aware of the administrative segregation hearing at the time it occurred or what transpired at the hearing.  The plaintiff has failed to present evidence demonstrating a genuine issue regarding defendant Rinaldi's personal involvement in the underlying incidents.

The plaintiff alleges that defendant Cournoyer reviewed all documents utilized in his placement on Administrative Segregation Status and could find no reason to alter the decision. He also alleges that she refused to release him from Northern Correctional Institution after the disciplinary charge of assault and the criminal charge of assault both had been dismissed. Additionally, he alleges that defendant Cournoyer failed to overturn his placement at the Northern Correctional Institution despite knowing that he had been denied due process.  There is only one reference to defendant Cournoyer in the documents associated with the plaintiff's Administrative Segregation placement.  She was copied on a May 27, 2014 letter from Deputy Commissioner Scott Semple to the plaintiff.  In the letter, Deputy Commissioner Semple informed the plaintiff that his letter to the Commissioner seeking removal from Administrative Segregation and transfer to the New Haven Correctional Center was referred to the Deputy

Commissioner, as the matter was "under the purview of [his] office and . . . not subject to further review by the Commissioner." (Doc. # 101-3, at 41). The letter further informed the plaintiff that the decision on his appeal had been issued on May 20, 2014, and that the plaintiff had exhausted his administrative remedies with regard to that matter.

In *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), the Second Circuit explained that sending a letter to a supervisory official is sufficient at the pleading stage to support a plausible claim of supervisory liability. *Id.* at 140-41. Such an allegation, however, is insufficient at summary judgment. In *Grullon,* the issue was a letter sent to the warden. The court noted that whether the warden actually received the letter, read it, and became aware of the plaintiff's issue, or whether there were administrative procedures in place under which the warden would not have actually received the letter addressed to him, were issues to be resolved after the development of a factual record through discovery. *Id.* Here, the plaintiff has only provided evidence that defendant Cournoyer was copied on a letter to the plaintiff from the Deputy Commissioner. He has produced no evidence showing that she read the letter or was aware of the grounds for the plaintiff's appeal of the classification decision. Thus, this letter is insufficient to oppose the motion for summary judgment with regard to any claims against defendant Cournoyer.

The plaintiff listed defendant Bachan as his first choice for advocate at the classification hearing. Correctional Counselor Mortimer, the plaintiff's second choice, was appointed. Defendant Bachan's name does not appear on any other document associated with the plaintiff's placement on Administrative Segregation Status or the disciplinary charge. The plaintiff fails to present any evidence that defendant Bachan knew about the incidents or was involved in the events underlying the amended complaint.

The defendants' motion for summary judgment is granted as to all claims against defendants Milling, Rinaldi, Cournoyer and Bachan.

C.     Fourth Amendment Claims

The defendants contend that the plaintiff's Fourth Amendment claims lack merit for two reasons.  First, none of the defendants were responsible for the plaintiff's arrest.  That determination was made by Trooper Slaiby who is not a defendant in this case.  Second, no claim for false arrest or false imprisonment can lie because, at the time of the arrest, the plaintiff already was confined on other charges.

The plaintiff's Fourth Amendment claim for false arrest and false imprisonment is based on his contention that defendant Lovisolo made false reports against him. Courts considering federal civil rights claims based on false arrest or false imprisonment look to the law of the state in which the events in question took place. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203, 204 (2d Cir.  2007). False arrest or false imprisonment is defined under Connecticut law as "the unlawful restraint by one person of the physical liberty of another." *Id.* at 204 (internal quotation marks omitted). To prevail on his Fourth Amendment claims, the plaintiff must show that the defendant restrained his physical liberty and that the restraint was against his will.  *See Berry v. Loiseau*, 223 Conn. 786, 820 (1992).  The plaintiff cannot, however, state a claim for false arrest if, at the time of his arrest, he was already in custody or incarcerated on other charges. *See, e.g.*, *Swain v. Doe*, No. 3:04CV1020(SRU), 2009 U.S. Dist. LEXIS 87802, at *12-13 n.1 (D. Conn. Sept. 24, 2009) (false arrest claim failed because plaintiff's liberty was not restrained; he was in custody at time of arrest and remained in custody until after charges were nolled); *Johnson v. Leger*, No. 3:07CV128(WWE), 2009 U.S. Dist. LEXIS 26562, at *22 (D. Conn. March 31, 2009) (no basis for false arrest or malicious prosecution claim where plaintiff was in custody on

12

other charges when arrested and remained so until after charges were dismissed). As the

plaintiff's physical liberty was not restrained as a result of this arrest, his Fourth Amendment

claims for false arrest or false imprisonment fail.

The plaintiff also asserts a malicious prosecution claim against defendant Lovisolo based

on the decision to institute a criminal proceeding. To assert a claim for malicious prosecution

under Section 1983 the plaintiff must show that his Fourth Amendment rights were violated.  He

also must establish the elements of a malicious prosecution claim under state law.  *See Acevedo*

*v. Sklarz*, 553 F. Supp. 2d 164, 172 (D. Conn. 2008).  Under Connecticut law, a malicious

prosecution claim has four elements:  (1) the defendant initiated or procured criminal

proceedings against the plaintiff; (2) the criminal proceedings terminated in the plaintiff's favor;

(3) the defendant acted without probable cause; and (4) the defendant acted with malice.  *Id.*

"A person is deemed to have initiated a proceeding if his direction or request, or pressure

of any kind by him, was the determining factor in the officer's decision to commence the

prosecution … [or] the defendant's request might reasonably have been found to be the

proximate and efficient cause of the arrest."  *Id.* (internal quotation marks omitted).  Here,

defendant Lovisolo clearly wanted to press criminal charges and had his supervisor call the state

police.  Trooper Slaiby interviewed defendant Lovisolo and Nurse Steelman.  The plaintiff

refused to speak with him.  The decision to arrest the plaintiff was made by Trooper Slaiby, not

by defendant Lovisolo.  Trooper Slaiby may have relied heavily on defendant Lovisolo's

statement but the plaintiff fails to present evidence showing that defendant Lovisolo's desire to

have the plaintiff arrested, rather than the results of Trooper Slaiby's investigation, was the

proximate cause for the decision to arrest the plaintiff.

Even if defendant Lovisolo's preference could be considered the determining factor, the

proceedings did not terminate in the plaintiff's favor.  To establish favorable termination, the plaintiff must show that the charges were dismissed without a trial and under circumstances indicating an abandonment of the charges by the prosecutor without a request from him or any arrangement with him.  *See Ruttkamp v. De Los Reyes*, No. 3:10-cv-392 (SRU), 2012 U.S. Dist. LEXIS 116995, at *44-45 (D. Conn. Aug. 20, 2012. Both parties have submitted a copy of the transcript during which the charges were nolled.  The prosecutor stated that he was entering a nolle on the charges because the plaintiff "was sentenced on May 28, 2014 to 12 [years] suspended after five years, three years probation out of Part-A in New London." (Doc. # 101-3, at 31, p. 27:6-9). The judge approved the nolle "for the reason stated."  (*Id.* at 31, p. 27:10-11). The transcript shows that the charges were nolled only because the plaintiff had been sentenced on another charge.  There is no indication that the charges were abandoned for lack of evidence or probable cause.  Thus, the plaintiff has not satisfied the favorable termination requirement.

In addition, the fact that the plaintiff was incarcerated on other charges during this entire period precludes his malicious prosecution claim.  *See Johnson*, 2009 U.S. Dist. LEXIS 26562, at *22 (no basis for false arrest or malicious prosecution claim where plaintiff was in custody on other charges when arrested and remained so until after charges were dismissed).

The defendants' motion for summary judgment is granted as to all Fourth Amendment claims.

D.    <u>Due Process Claims</u>

The plaintiff alleges that he was transferred to Northern Correctional Institution without a pre-transfer hearing.  When the hearing was held, no witnesses testified and no documentary evidence was offered to show that the plaintiff's continued presence in general population posed a threat to institutional security or to show that he assaulted anyone.  He further alleges that

14

although the disciplinary charge and criminal proceeding were dismissed, he was not returned to general population.

The Due Process Clause of the Fourteenth Amendment protects against the deprivation of life, liberty or property without due process of law.  The liberty interests protected under the Fourteenth Amendment may arise from the Due Process Clause itself or from state law.  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

To state a claim for violation of procedural due process in connection with his placement on Administrative Segregation Status, the plaintiff must show that he had a protected liberty interest and that the defendants deprived him of that interest without being afforded due process of law.  The Constitution does not provide inmates with a liberty interest in avoiding more restrictive confinement such as Administrative Segregation.  *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005).  Thus, the plaintiff has a protected liberty interest "only if the deprivation [of which he complains] is atypical and significant and the state has created the liberty interest by statute or regulation." *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (internal quotation marks omitted).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation.  In *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000), the Second Circuit concluded that "[c]onfinement in normal [administrative segregation] conditions for 305 days is . . . a sufficient departure from the ordinary incidents of prison life to

15

require procedural due process protections under *Sandin*."  The plaintiff in the instant case was held in Administrative Segregation Status for more than 305 days.  Thus, his confinement constitutes an atypical and significant hardship which could lend itself to the creation of a protected liberty interest by means of a state statute or regulation.

The plaintiff refers the Court to *Dorlette v. Butkiewicus*, No. 11-cv-1461(TLM), 2013 U.S. Dist. LEXIS 126252 (D. Conn. Sept. 4, 2013) to support his contention that he has a state-created liberty interest in notice and a hearing prior to being placed on Administrative Segregation Status.  The court in *Dorlette* relied on Department of Correction Administrative Directive 9.4, Section 12, to support the existence of a protected liberty interest in a hearing before being placed on Administrative Segregation Status.  *Id.* at *50-53. Section 12(A) provides in part:  "Placement of an inmate on Administrative Segregation Status shall be at the discretion of the Director of Offender Classification and Population Management in accordance with this Directive.  An inmate shall not be placed in Administrative Segregation Status without notice and a hearing."  Subsection B provides that the hearing "shall be conducted not later than 30 days after the completion of Administrative Detention pending an investigation or after the completion of Punitive Segregation sanctions."

http://www.ct.gov/doc/cwp/view.asp?a=1494&q=265226 (last visited Dec. 13, 2016).

Although the plaintiff has a protected liberty interest in avoiding classification to Administrative Segregation Status,[5] he received all the process he was due.  In *Wilkinson*, the

---

[5] The Court notes that, although the plaintiff was immediately transferred to Northern Correctional Institution, he provides no evidence that he was placed on Administrative Segregation Status immediately upon his arrival.  The Notification of Hearing form specifically states that the hearing will determine whether the plaintiff will be placed on Administrative Segregation Status, suggesting that the classification had not yet been made. (Doc. # 87-11, at 2). The Court need not resolve this question as it concludes that the plaintiff received all required process.

Supreme Court considered what process prison officials must afford inmates before classifying them for placement in Ohio's highest security prison.  The Court held that, although *Sandin* modified the procedure for determining whether a liberty interest has been created, *Hewitt* remains the standard for the procedures that must be afforded if it is determined that a liberty interest has been created.  *Wilkinson*, 545 U.S. at 229.

In *Hewitt*, the Supreme Court held that prior to an inmate's placement in administrative segregation, he "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476. This proceeding "must occur within a reasonable time following an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials." *Id.* at 476 n.8.

The plaintiff's hearing was held on April 4, 2014, ten days after the incident.  Notice of the hearing was delivered to him on March 31, 2014.  The notice stated that he was being considered for Administrative Segregation placement based on his disruptive conduct on March 25, 2014, including, but not limited to, the alleged assault on defendant Lovisolo, the seven disciplinary reports he had received since his arrival at BCC, his recent history of threatening staff at other correctional facilities, and that fact that he had received 226 disciplinary reports during two prior Administrative Segregation Status classifications, sixteen of which were for assault on correctional staff. (Doc. # 87-11, at 2). The plaintiff was afforded an opportunity to present his views at the hearing at which he had the assistance of an advocate.  The hearing report stated that the decision was based on the recommendation of Deputy Warden Jones, the incident report of the March 25, 2014 incident, and the plaintiff's other disciplinary reports.

(Doc. # 87-5, at 2). The hearing officer recommended placement on Administrative Segregation

Status for the reasons that the plaintiff "intentionally spit on a staff member [and] has also

accumulated 267 disciplinary reports." (Doc. # 87-14, at 2). In his capacity as Director of

Offender Classification and Population Management, the defendant Lewis authorized the

placement on April 7, 2014. The plaintiff's appeal of the placement decision was denied.  The

reviewer, Captain Synott, stated that the placement on Administrative Segregation Status was

warranted based on the plaintiff's behavior since his admission.  He had been found guilty of

disciplinary violations 19 times since August 2013.  Captain Synott stated that the compilation of

all of the plaintiff's actions warranted his placement. (Doc. # 87-20, at 2). Based on the evidence

of record, the Court concludes that the plaintiff received all the process he was due.

The Court further notes that the plaintiff's contention that due process required that the

hearing be held before his transfer is without merit.  First, the clear language of the directive

does not require a hearing before transfer.  Second, even if it did, constitutionally required

process is not determined by state law.  *See Cleveland Board of Education v. Loudermill*, 470

U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question

remains what process is due. . . . The answer to that question is not to be found in the [state]

statute.") (internal quotation marks and citation omitted); *Holcomb v. Lykens*, 337 F.3d 217, 224

(2d Cir. 2003) ("Although state laws may in certain circumstances create a constitutionally

protected entitlement to substantive liberty interests, state statutes do not create federally

protected due process entitlements to specific state-mandated procedures.") (citations omitted).

Finally, the plaintiff challenges the failure to return him to the general prison population

as a denial of due process.  After the disciplinary charge was dismissed, the plaintiff sought

transfer back to the general population.  He stated in his request that the disciplinary charge was

18

dismissed "because the supervisor lie[d]." (Doc. # 87-21, at 2). In fact, the disciplinary charge was dismissed because the charge was not "disposed [of] prior to [the] end of continuance dates," and the "issuing facility failed to provide . . . any documentation not authored by [the] reporting employee." (Doc. # 87-18, at 3). Thus, there was no determination that the allegations were false.

The plaintiff was not housed in the general population before he received the disciplinary report. He was housed in the restrictive housing unit pending transfer to Northern Correctional Institution. Further, the evidence contradicts the plaintiff's contention that his Administrative Segregation placement was based solely on the incident with defendant Lovisolo. All of the documents indicate that the incident with defendant Lovisolo was only the latest incident in a long history of disruptive and threatening behavior. The plaintiff provides no support for his position that dismissal of the disciplinary charge relating to defendant Lovisolo required his removal from Administrative Segregation Status when his placement was not based solely on the incident underlying the disciplinary report.

The plaintiff has failed to demonstrate that he was denied due process. Accordingly, the defendants' motion for summary judgment is granted as to the due process claims.

E.    Eighth Amendment Claims

The plaintiff alleges that the failure of defendant Lewis to overturn his placement at Northern Correctional Institution despite knowing about the due process violations constitutes deliberate indifference in violation of the Eighth Amendment. As the Court has concluded that the plaintiff's right to due process was not violated, there is no factual basis for this claim against defendant Lewis.

The Eighth Amendment prohibits conditions of confinement that are disproportionate and

violate "broad and idealistic concepts of dignity, civilized standards, humanity, and decency."
*Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted). To state an
Eighth Amendment claim, the plaintiff must meet two requirements. First, he must show that he
suffered a deprivation that was "sufficiently serious" in that it denied "the minimal civilized
measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation
marks omitted). Second, the plaintiff must show that the defendant had a "sufficiently culpable
state of mind." *Id.* (internal quotation marks omitted). That is, the defendant must have acted or
failed to act despite knowing of a substantial risk of serious harm. *Id.* at 842. The defendant
must actually be aware of facts supporting an inference of a substantial risk of serious harm and
must draw that inference. *Id.* at 837. In addition, to be held liable under the Eighth Amendment,
the defendant must have failed "to take reasonable measures to abate" the risk. *Id.* at 847.

Although the conditions in Administrative Segregation Status are more restrictive than in
the general population, the plaintiff has provided no evidence showing that he was denied the
minimal civilized measure of life's necessities. Thus, he fails to establish an Eighth Amendment
violation. The defendants' motion for summary judgment is granted as to this claim.

F.   Equal Protection Claims

The plaintiff alleges that defendant Lovisolo treated him differently from other similarly
situated prisoners. The defendants specifically addressed this claim in support of their motion
for summary judgment. Although the plaintiff's opposition memorandum lists an "Equal
Protection Claim" as one of the four remaining claims in this case, he does not address that claim
in any way in his memorandum. (Doc. # 101-1, at 4). "Federal courts may deem a claim
abandoned when a party moves for summary judgment on one ground and the party opposing
summary judgment fails to address the argument in any way." *Ferraresso v. Town of Granby*,

646 F. Supp. 2d 296, 305 (D. Conn. 2009) (internal quotation marks omitted). The Court thus deems abandoned the plaintiff's equal protection claim.[6]

In any event, the Court finds no valid basis for an Equal Protection claim. The Equal Protection Clause protects prisoners from invidious discrimination.  This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Prisoners are not a suspect class. *See Lee v. Governor of New York*, 87 F.3d 55, 60 (2d Cir. 1996). Nor is the right in question, to be released from Administrative Segregation Status, a fundamental right.  Thus, the Court is not required to apply strict scrutiny.  *See Vacco v. Quill*, 521 U.S. 793, 799 (1997).  To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted). The plaintiff alleges no facts and presents no evidence showing that he was treated differently from other similarly situated inmates.

The plaintiff also could assert an equal protection claim based on a "class of one" theory. To state a valid claim, the plaintiff must allege first that he was intentionally treated differently from others who are similarly situated.  Second, he must allege facts showing that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562,

---

[6]The Court notes that although the plaintiff is proceeding pro se in this case, his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment was, according to a "disclaimer" signed by an attorney with the Inmates' Legal Aid Program, "prepared by the Inmates' Legal Aid Program ((ILAP) on behalf of, and with the input of, an inmate in a correctional facility." (Doc. # 101-1, at 14).

564 (2000).  The plaintiff must allege an "extremely high" level of similarity with the person to

whom he is comparing himself; their circumstances must be "*prima facie* identical."  *Neilson v.*

*D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled in part on other grounds*,  *Appel v.*

*Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).  In his complaint, the plaintiff did not identify

any other inmate who was treated differently.  Nor did he present any such evidence in

opposition to the motion for summary judgment.  Thus, the plaintiff fails to present evidence to

support a class of one equal protection claim.  The defendants' motion for summary judgment is

granted as to the equal protection claim.

  G.  Conspiracy Claim

  In his amended complaint, the plaintiff states that he asserts a claim for conspiracy under

section 1983. In his memorandum, he does not include conspiracy in his list of remaining claims

and does not in any way respond to the defendants' argument as to a conspiracy claim.

Accordingly, the Court deems abandoned the plaintiff's conspiracy claim. The Court notes that

in his amended complaint, the plaintiff simply states that he "further asserts claims for

conspiracy under sec. 1983 by Carl Lovisolo which was the proximate cause of plaintiff's

injuries." (Doc. # 8, at 7, ¶ 5). "[C]omplaints containing only conclusory, vague, or general

allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his

constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient,

unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292

F.3d 307, 325 (2d Cir. 2002) (internal quotation marks omitted). The defendants' motion for

summary judgment is granted as to the conspiracy claim.

IV.    <u>Conclusion</u>

The defendants' motion for summary judgment (**doc. # 87**) is **GRANTED.**

The Clerk is directed to enter judgment and close this case.

SO ORDERED this 14th day of December,  2016.

_____/s/  DJS_____
                        Dominic J. Squatrito
                        United States District Judge